Arie AUSTIN *v.* STATE of Arkansas

CR 75-213                                   536 S.W. 2d 699

Opinion delivered May 24, 1976

*Walker, Kaplan & Mays, P.A.,* by: *Richard L. Mays* and *Henry L. Jones Jr.,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

ELSIJANE T. ROY, Justice. Appellant Arie Austin assisted her minor son, Anthony Austin, in purchasing an automobile. Because of his minority she purchased the vehicle in her name but gave him possession, and he was to make the monthly payments. On August 1, 1973, appellant purchased a 1973 Pontiac automobile from Cole Pontiac

Company in DeQueen, Arkansas, which firm negotiated the financing arrangement through the First National Bank of that same city. The financing statement provided for approximately $4500 to be paid in monthly installments of $149.09 beginning September 1, 1973, for a period of 36 months.

On March 6, 1974, the First National Bank through error advised appellant that her note had been satisfied, that her title was clear of any lien and the legal papers on the car were enclosed with the letter. On March 15, appellant transferred the certificate of title to the car to her son, who used the vehicle as security for a loan obtained later from the Pike County Bank. It was not until April 9, 1974, several weeks after appellant had transferred the title, that the mistake was discovered by First National Bank, and two of its employees contacted appellant in an effort to correct the error. Both testified appellant directed them to see her son (living in Pike County) who she said had the vehicle and title documents. Although First National Bank recovered the automobile, it later had to surrender the car to the Pike County Bank in recognition of the latter institution's lien. Both the Pontiac Company and the First National Bank are located in Sevier County.

On August 29, 1974, appellant was charged with the crime of disposing of mortgaged property with intent to defraud the lienholder. A jury found appellant guilty, and she was sentenced to six months in the State Penitentiary. From that conviction she brings this appeal.

As error appellant argues that she was entitled to a directed verdict on two grounds. First, that as a matter of law the bank consented to the transfer of the automobile. The second contention is that the evidence is insufficient to sustain the conviction due to the lack of evidence showing criminal intent on the part of appellant.

Appellant was prosecuted under Ark. Stat. Ann. § 41-1928 (Repl. 1964)[1], which provides:

---

[1]Repealed, Acts 1975, No. 928, § 3, effective January 1, 1976.

> It shall be unlawful for any person to sell, barter, exchange or otherwise dispose of, or to remove beyond the limits of this State or of any county in which a landlord's or laborer's lien exists, or in which a lien has been created by virtue of a mortgage or deed of trust, or to which title has been retained by the vendor, any property of any kind, character or description, upon which a lien of the kind enumerated above exists or to which title still remains in the vendor: provided, such sale, barter, exchange, removal or disposal of such property be made with the intent to defeat the holder of such lien or title in the collection of the debt secured by such mortgage, laborer's or landlord's lien or retention of title.

This statute is unequivocal in its intendment that, in order for an action to be brought pursuant to its terms, there must be a valid lien upon the property which is sold, bartered, exchanged or otherwise disposed of in the manner explained therein. It is the absence of a lien at the time of the transfer which is determinative of this appeal and which makes it unnecessary to consider appellant's assigned error except as is relative to this point. It is not denied that appellant incurred a debt for a sum in excess of $4,000. Only three installments were paid by appellant's son under the financing agreement. This, of course, did not amount to a substantial reduction of the total indebtedness.

Appellee strongly urges that even though appellant's son was making the payments, she should reasonably have known the indebtedness had not been paid so soon after assumption of the obligation. However, we are bound to a standard of review which requires not only that a criminal statute " . . . be strictly construed in favor of one accused [citation omitted]," but that "[n]othing may be left to intendment and all doubts must be resolved in favor of the defendant in construing such statutes [citations omitted]." *Hill* v. *State,* 253 Ark. 512, 487 S.W. 2d 624 (1972). See also *Burke* v. *State,* 235 Ark. 882, 362 S.W. 2d 695 (1962), cert. denied 373 U.S. 922, 83 S. Ct. 1523, 10 L. Ed. 2d 421. In related criminal statutory construction we have noted in *Lewis* v. *State,* 220 Ark. 259, 247 S.W. 2d 195 (1952), that:

We have consistently followed the universal rule that "criminal statutes are to be strictly construed, and no case is to be brought by construction within a statute unless it is *completely* within its words . . . [citation omitted]." (Italics supplied.)

Here, albeit by erroneous administrative action, the First National Bank held no lien as contemplated by the criminal statute at the time appellant transferred title to her son. Thus the statute under which appellant was charged and convicted was improperly applied since the property transferred was not that ". . . upon which a lien of the kind enumerated above exists or to which title still remains in the vendor . . . . " This decision in no way impairs the right of First National Bank to proceed against appellant in a civil action.

For the foregoing reasons the cause is reversed.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I cannot agree that, at the time of the alleged offense, as between the First National Bank and appellant, there was no lien on the automobile. There is no question about the invalidity of the security interest as to third parties who acted in reliance upon the erroneous release. The important consideration is the status of the lien as between the bank and Mrs. Austin. Ark. Stat. Ann. § 41-1928 (Repl. 1964) was not enacted for the protection of third parties. The sole and only purpose of the statute is the protection of the secured party. 15 Am. Jur. 2d 401, Chattel Mortgages § 242. In Arkansas, we have recognized that the question of the validity of the mortgage as to third parties is of no consequence in prosecutions under the statute. Insofar as the existence of the lien or security interest is concerned, the only question is whether there is a valid, enforceable lien as between the parties. *McClaskey* v. *State*, 168 Ark. 339, 270 S.W. 498.

In this case, the evidence is quite clear that the release was made through mistake. Viewed in the light most favorable to the state, there is also cogent evidence tending to

show that appellant knew it was a mistake and knew that the debt had not been paid. The financing arrangement had been made in August 1973. The amount of the debt was $4500. The 36 monthly payments of $149.09 each commenced on September 1, 1973. The erroneous release was dated March 6, 1974, and the certificate of title on which it was endorsed mailed to appellant. Appellant received the loan papers and thereafter, on March 15, 1974, transferred the title to her son, who later gave a security interest of the automobile to an innocent third party, whose priority was recognized by the First National Bank.

On April 9, 1974, Joe Roberts, the bank's auditor and Mike Brewer, a loan administration officer of the bank called on appellant. According to Roberts, Mrs. Austin acknowledged she knew she had not "paid off the car," or "paid off the note." Brewer testified that appellant indicated that "she knew there was something there that wasn't right at the time," and that she realized that she had not paid off the loan on the car. Appellant admitted that she knew that she had not paid off the loan, but said she felt it had been paid because her son was making the payments and she "thought it could have been insurance." Of course, resolution of factual questions including appellant's intent and good faith or the lack of it was for the jury.

Any assertion that the lien was not in effect where it resulted from mistake is based upon estoppel. Where the want of record would not bar a valid lien as between the parties, the mere discharge of the mortgage by release or satisfaction on the record cannot prevent the enforcement of the lien against the mortgagor-borrower where the debt has not actually been paid or satisfied. *Lee* v. *Wagner,* 71 Wis. 191, 36 N.W. 597 (1888). The signing of a satisfaction reciting payment of a mortgage debt, when nothing was in fact paid, made through mistake is of no effect. *Linn* v. *Ziegler,* 68 Kan. 528, 75 P. 489 (1904). Of course, in Arkansas an unrecorded mortgage is valid between the parties. *Barnett* v. *State,* 65 Ark. 80, 44 S.W. 1037; *McClaskey* v. *State,* supra. Even equitable mortgages and liens some within the coverage of such statutes. *Farmer* v. *State* 18 Ga. App. 307, 89 S.E. 382 (1916); *Courtney* v. *State,* 10 Ala. App. 141, 65 So. 433 (1914); *Williams*

v. *State*, 40 Ala. App. 687, 122 So. 2d 549 (1960). See also, *Beard* v. *State*, 43 Ark. 284.

To say the very least, there is evidence of the existence of an equitable mortgage or security interest in spite of the release.

The questions of the intent and good faith of appellant were for the jury. I would affirm the judgment.