## MORELAND v. STATE.

### Opinion delivered July 10, 1916.

1. CRIMINAL LAW—ASSAULT AND BATTERY—NECESSARY ACTS.—Proof that defendant took hold of the arm of the prosecutrix, and attempted to kiss her, will sustain a charge of assault and battery in the absence of proof that prosecutrix gave her consent.

2. CRIMINAL LAW—FORMER CONVICTION—ABUSIVE LANGUAGE—ASSAULT AND BATTERY.—The offense of a breach of the peace by using abusive language is not embraced in the act of assault and battery; they are not of the same generic class and one cannot be included in the other, although they may arise out of the same occurrence or transaction.

Appeal from Craighead Circuit Court, Jonesboro District; *J. F. Gautney*, Judge; affirmed.

#### STATEMENT BY THE COURT.

This is an appeal from a conviction against the appellant for an assault and battery on the person of one Mrs. Ida Turner. Mrs. Turner testified substantially as follows: That she lived in the country; that on January 20, 1916, at about 9 o'clock in the morning, she went to visit her sister, who lived about a half mile away by the path or field road over which she was traveling. No one was with her except her baby. She met Doctor Moreland, who was traveling south, and crossed Mrs. Turner's road. He was in his buggy, and after driving through the gate, he stopped and waited until Mrs. Turner came close to him. She walked up in about ten steps of him, and he wanted to know where she was going to travel that morning, and after a few words of conversation he walked up and took hold of her arm, squeezed it and said, "Are you well." She replied "No." He then said, "Kiss me this morning." She refused, and he pushed around some way, and his beard scraped her face. Her baby screamed, and he said, "Are you going through the field?" She said, "Yes," and he said, "Now I will open the gate for you." She refused to let him open the gate for her, and he said, "Ida, can't I come to see you," and she replied, "No." Then he went on, and she continued her journey to her sister's. Doctor Moreland tried to kiss her about

six years before, and at that time she objected to it, but said nothing about it. This time she reported the matter to her husband. She never told the doctor to take his hand off her wrist, but stepped back for him to take it off. He just walked up and "kinda squeezed on her wrist," and she stepped aside and he walked up and took hold of her again. After he asked her to kiss him, she told him to quit, and he did quit.

Doctor Moreland testified as follows: "I have known Mrs. Ida Turner all her life, and have acted as her family physician during that period of time. The facts have been stated pretty well. I did take hold of her wrist with my right hand, but she didn't step over to one side. About that time I asked her to kiss me, and she said no, and the child cried about that time, and it passed off at that. She didn't object to my holding her wrist nor raise any outcry for help or cry. I didn't kiss her. When she said no, I stopped right there. I am 65 years old."

On cross-examination, appellant testified that he had kissed the prosecutrix about six years ago; that he kissed her with her consent; she offered no resistance whatever. The reason he had for believing that his approaches would be acceptable to her on this occasion was their former relations.

It was agreed by the prosecuting attorney and the attorney for the appellant that the appellant had been charged with a breach of the peace for the use of abusive language in connection with this same transaction; that he was fined $50 therefor, and that the fine had been paid. The conviction in that case was predicated upon the same testimony that had been introduced in this case.

The appellant asked the court to instruct the jury to return a verdict in his favor. He further asked that the court instruct the jury that he had already been convicted on a charge of a breach of the peace for abusive language, in which the same testimony was introduced as had been introduced in the present case, and that by reason of such conviction he could not be convicted on the present charge. The court refused these prayers for in-

structions, and gave instructions on its own motion, to which appellant excepted.

The above are all of the facts that are necessary to be stated for a correct determination of the issues presented by this appeal.

*Basil Baker* and *Horace Sloan*, for appellant.

1. The undisputed evidence shows that no crime was committed and the court should have directed a verdict for defendant. 87 Ark. 227. The mere sqeezing a woman's wrist and the accidental brushing of her face with the ends of his whiskers utterly fails to establish assault and battery. 87 *Id.* 227; 49 *Id.* 179; 1 Md. 3; 1 S. W. 447; 79 *Id.* 577; 46 Tex. Cr. 1. No force was intended or proven.

2. It was error for Ed Turner and John Winn to testify about conversations concerning a proposed compromise. 52 Ala. 411.

3. The court erred in requiring defendant to testify with reference to former convictions for assault. Kirby's Digest, § 3138, as amended by Acts 1905, page 143; 70 Ark. 107, 110, 600.

4. The plea of former jeopardy should have been sustained. Kirby's Digest, § 5633; 89 Ark. 378; Ann. Cases, 1913-A, 1056; 109 Ark. 60; 99 Ark. 149. A conviction for a minor offense is a bar to prosecution for the same act charged as a higher crime. Ann. Cases, 1912-C, p. 66T; 11 Bush (Ky.) 603; 3 N. C. (2 Hayw.) 4; 57 Vt. 576.

5. Argue the instructions which are not passed upon by the court, citing Kirby's Digest, § 1687; 36 Ark. 222; 41 *Id.* 408; 100 *Id.* 330; 109 *Id.* 391; 172 S. W. (Tex.) 1025.

*Wallace Davis,* Attorney General, and *Hamilton Moses,* Assistant, for appellee.

1. The court properly refused to direct a verdict. Defendant had the ability to commit the battery, and did so for he applied force sufficient to draw the prosecutrix toward him. His intention is clear. Kirby's Di-

gest, § § 1583-4; 1 Am. & E. Enc. L. (1 ed.) 779; 2 Bishop Cr. Law, § 3; 83 Minn. 453; 1 Words & Phrases, 535.

2. Argue the admission of testimony as to compromise, citing 12 Cyc. 418; 34 Ark. 480; 102 *Id.* 525; 150 S. W. 119, and other cases, but the court does not pass on this.

3. Testimony was admissible to prove former conviction of *any crime,* for the purpose of going to the credibility of the witness. Clark's Cr. Law (2 ed.), 40; 5 Words & Phrases, 4533.

4. There was no error in the court's charge. Kirby's Digest, § § 1583-4. A battery is the use of any unlawful violence on the person, with intent to injure. 19 Ark. 205-213; 99 *Id.* 90; 44 Tex. 43; 20 So. 296; 94 Ky. 433; 95 Mass. 308-317.

5. The plea of former jeopardy was properly overruled. Kirby's Digest, §§ 5633, 1648; 42 Ark. 40; 61 *Id.* 88, 99; 66 Ind. 223; 61 Ark. 99. The two offenses are separate and distinct. 53 Miss. 439; 61 Ark. 88, 99; 66 Ind. 223.

WOOD, J., (after stating the facts). (1) The undisputed testimony shows that appellant was guilty of the crime charged.

An "assault and battery is the unlawful striking or beating the person of another." Kirby's Digest, § 1584.

Mr. Bishop says: "The kind of physical force necessary to constitute an assault is immaterial." See 2 Bishop's New Crim. Law, section 28. Among the examples, he gives to illustrate the text is, "The taking of indecent liberties with a woman; even laying hold of and kissing her against her will." Citing, *Reg.* v. *Dungey,* 4 Fost. & F. 99, 103. The author says (vol. 1, sec. 548): "Assault and battery are two offenses against the person and personal security, in the facts of most cases existing together, and practically regarded as one." "A battery," says he, "is any unlawful beating, or other wrongful physical violence or constraint, inflicted on a human being without his consent."

In *Mailand* v. *Mailand,* 83 Minn. 453-455, it is said: "An intent to do violence is an essential ingredient of the

offense, but the degree of violence is, of course, immaterial. The least or slightest wrongful and unlawful touching of the person of another is an assault." See, also, Clark's Criminal Law, p. 228.

The presumption is that Mrs. Turner was a chaste woman, and there is no evidence to the contrary. The testimony of the appellant to the effect that he believed his approaches would be acceptable to her because he had kissed her and she had kissed him six years ago, did not constitute an excuse or justification for his laying his hands upon her with the view of kissing her as he had done on the previous occasion. The undisputed proof shows that on the former occasion when he kissed her, she was a single woman. Since that time she had married, and at the time of the alleged offense, had her baby with her. The circumstances were entirely different.

Although the appellant had been the prosecutrix's family physician, as he says, all her life, that fact and the fact that he had kissed her before when she was a maiden did not justify him in laying his hands upon her before he knew whether or not she would consent to these advances. The presumption must be indulged that a virtuous woman would not have consented to be kissed under such circumstances. It was unlawful for appellant to kiss Mrs. Turner without her consent, and he had no right to presume from his past conduct and his professional relations with her that she would consent. The undisputed testimony shows that she did not consent. It is the sacred right of every woman to protect her virtue. Hence, she can, if she will, hold her person aloof from the contaminating touch of any man of lecherous inclination. No man, whether his purpose be lascivious or otherwise, has any right to lay his hands upon a chaste woman, indulging the presumption that she will consent to an act which it would be unlawful for him to commit without her consent, and in the absence of proof to warrant the inference that Mrs. Turner did consent to the act of appellant in laying his hands upon her for the purpose of kissing her, it must be held that the conduct of appellant in doing so

was an assault and battery within the meaning of the above authorities.

The appellant relies upon *Clerget* v. *State*, 83 Ark. 227, as supporting his contention that the evidence was not sufficient to convict him. In that case the utmost that the evidence tended to prove was that Clerget told his companion Malone while they were making the rounds to warn road hands to work, that "somewhere on our rounds there are some girls we can go to and have a good time." When they reached a certain residence, Clerget went in and gave the sign to Malone that they had reached the place mentioned. Clerget went in and Malone followed him. Clerget was asking a young lady if any one was there subject to road duty, and she replied that her brother was. Clerget commenced writing a warning notice to him, and then Malone touched the young lady upon the chin, which she indignantly resented. We held upon these facts that Clerget was not guilty of an assault and battery. Clerget did not lay his hands upon the young lady, and the evidence was not sufficient to show a conspiracy between Clerget and Malone to do an unlawful act, and hence Clerget was not guilty. In that case Malone, of course was guilty of an assault and battery, because he took undue liberty with the person of the young woman without her consent, just as appellant did with Mrs. Turner. The court therefore, upon the undisputed evidence, might have so declared as a matter of law.

The judgment is right, and it is therefore unnecessary for us to consider the errors assigned in the rulings of the court in giving and refusing prayers for instructions, and in the admission of testimony.

(2) Under the agreed statement of facts, to the effect that appellant was convicted for the offense of abusive language growing out of the same transaction, appellant claims that this prosecution is barred under the authority of section 5633 of Kirby's Digest, which reads, in part, as follows: "Whenever any party shall have been convicted before any justice of the peace, * * * said conviction shall be a bar to further prosecution before any

* * * justice of the peace or circuit court for such offense, or for any misdemeanor in the act committed."

But the offense of a breach of the peace by using abusive language is not embraced in the act of assault and battery. They are not of the same generic class and one can not be included in the other, although they may arise out of the same occurrence or transaction. This statute (section 5633) was not intended to prevent the State from carving out and prosecuting for separate and distinct offenses growing out of the same occurrence or transaction. The statute was only designed to prevent more than one prosecution for one and the same act constituting the same offense. The use of insulting words is one offense and assault and battery is an entirely separate and distinct offense, although the abusive and insulting words may have been used at the time of and in connection with the assault and battery. The use of the insulting words and the assault and battery were different acts. They were not "embraced in the act committed" within the sense of the statute.

There are no reversible errors in the record, and the judgment is therefore affirmed.